## 57939. MINTER v. POWELL et al.
## 57940. McCONNELL v. POWELL et al.

QUILLIAN, Presiding Judge.

Appellees brought this action for damages and attorney fees, alleging both fraud and negligence. Based upon the jury's answers to interrogatories, the trial court entered judgment in favor of appellees.

U. S. Gold, one of the defendants below, dealt in gold concentrate. In March, 1975, appellant McConnell, a U. S. Gold salesman entered into negotiations with appellee Powell, a potential customer. Following these negotiations, a contract was signed in late March or early April by McConnell on behalf of U. S. Gold, and by Powell on behalf of appellees. Under the contract, Powell was to send U. S. Gold 28 bars of silver plus $4,813.60 for the purchase of gold concentrate. This gold concentrate was to be shipped from a mine in California to Powell at his home in Niagara Falls, N. Y.

In late March, 1975, Georgia authorities became concerned that the gold concentrate and silver bars were "securities" subject to various legal restrictions. U. S. Gold closed its doors until this matter could be resolved. As a result, U. S. Gold employees were thrown out of work. At this time, U. S. Gold had several outstanding obligations including back salaries, commissions, rent, and federal taxes.

After U. S. Gold closed, on or about April 1, 1975, appellee Powell sent 28 bars of silver and a check for $4,813.60, payable to U. S. Gold, to U. S. Gold's Atlanta address. Stewart Gordonstein, an employee of U. S. Gold, delivered the check and gold bars to appellant Minter, the U. S. Gold bookkeeper, who deposited the check in U. S. Gold's account. Appellant Minter heard nothing further

about the check. She did not write any checks on the account after the deposit. Appellant Minter's employer at U. S. Gold, Daniel Goldstein, instructed her in writing to sell the 28 bars of silver, pay employees' salaries, rent, federal taxes, and other bills. She was also instructed that anyone could elect to receive payment in silver bars.

Pursuant to her instructions, appellant Minter gave seven bars to appellant McConnell for his commissions, 3 bars to Stewart Gordonstein for his salary, 3 bars to another U. S. Gold employee for salary, and one bar to U. S. Gold's landlord for rent. This left 14 bars to pay appellant's salary and other outstanding bills.

Before Minter, Short, and Gordonstein could sell their 20 bars of silver, an investigator from the state securities office confiscated them pending a determination as to whether they were securities. In May, 1975, after it was determined that the silver bars were not securities, the Secretary of State filed an interpleader action naming appellee Powell and appellant Minter as defendants. On June 3, 1975, Powell took Minter's deposition, at which time Powell discovered what happened to the other 8 bars of silver and the $4,813.60 check.

On June 12, 1975, a final order was entered in the interpleader action. The order was based upon "an agreement" that the parties had reached. Under the settlement, appellant Minter was to receive $2,000 from appellee Powell. Powell was to receive the 20 silver bars. Although the parties dispute the scope and effect of the settlement, this controversy is not pertinent to our disposition of the instant case.

After appellee Powell paid appellant Minter the $2,000 and the 20 silver bars were delivered to him, appellees brought the present action against appellant McConnell seeking 1) the value of the 7 bars of silver he received from Minter as his commission, 2) punitive damages, and 3) expenses of litigation. The complaint alleged both fraud and negligence on the part of appellant McConnell. Approximately 13 months after the complaint was filed, appellant Minter was added as a party defendant. Following a trial and submission of the case to the jury, a verdict was returned against appellant

Minter awarding $5,252.60 actual damages and $10,000 attorney fees, plus costs. The jury also returned a verdict against appellant McConnell awarding $7,886.60 actual damages, and $10,000 attorney fees, plus costs. The jury's answers to interrogatories establish that damages were awarded solely on appellee's negligence claim. Minter and McConnell bring these appeals. *Held:*

1. Appellees cannot recover for any fraudulent misrepresentations allegedly made by appellants. " 'The five elements of fraud and deceit in Georgia are: (1) false representation made by the defendant; (2) scienter; (3) an intention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; (5) damage to the plaintiff.' " *Romedy v. Willett Lincoln-Mercury, Inc.,* 136 Ga. App. 67 (2) (220 SE2d 74); *Shaw v. Cook County Federal Savings &c. Assn.,* 139 Ga. App. 419, 420 (228 SE2d 326) (1976).In the instant case the jury found that appellees had not been damaged by the alleged fraud of appellants. Under the above authorities, this was tantamount to a finding that appellants had not committed fraud.

2. In the absence of a breach of a legal duty, there can be no actionable negligence. *Ferrell v. Haas,* 136 Ga. App. 274, 278 (220 SE2d 771) (1975). Appellants cannot be held liable for any failure to inform appellees of the legal and financial problems of U. S. Gold if there was no legal duty to relay such information.

Under the facts adduced at trial, it is clear that appellant Minter was under no legal duty to inform appellees of U. S. Gold's legal and financial problems. Her position with U. S. Gold was purely ministerial. She had no role whatsoever in the formation, approval, or performance of contracts. Indeed, it was only after the silver bars were delivered to U. S. Gold that appellant Minter was informed that appellees and U. S. Gold had established a contractual relationship. Despite these facts, appellees contend that appellant Minter was nonetheless legally obligated to inform them that her company was in the midst of legal and financial problems. We do not believe the duty of disclosure extends this far. See *Shaw v. Cook County Federal Savings &c. Assn.,* 139 Ga. App. 419, 420-421, supra. To impose such a duty on

employees in the position of appellant Minter would, in our view, extend the duty of reasonable care beyond reasonable limits.

3. Appellees assert that appellant McConnell can be held liable on a theory of negligence since he knew that U. S. Gold would be unable to perform its contractual obligation and failed to disclose that "fact." We cannot agree. By entering into the contract, on behalf of U. S. Gold, appellant McConnell impliedly represented that his corporation would be able to perform its contractual obligation. The jury found, as a matter of fact, that appellant McConnell knew U. S. Gold would be unable to perform its contract with the appellees. In light of this knowledge, appellant McConnell's implied misrepresentation was necessarily intentional. ". . . [W]hen a promise is made, the promisor, by necessary implication, asserts a present and bona fide intention to perform; if, however, notwithstanding such implied assertion of a fact, the intention to perform be not present, there is a misrepresentation of a fact upon which fraud may be based." Evola Realty Co. v. Westerfield, 251 SW2d 298, 301 (Ky. App. 1952); *Reeves v. Williams & Co.,* 160 Ga. 15 (127 SE 293) (1924); *Johnson & Co. v. O'Donnell & Burke,* 75 Ga. 453 (1886); *Hill v. Stewart,* 93 Ga. App. 792, 796 (92 SE2d 829) (1956). See also Harper & James, Law of Torts 570-572, § 7.10 (1956). Accordingly, as the action was predicated upon fraud and negligence and the jury did not return a finding of fraud but based plaintiff's recovery upon negligence — the factual basis for negligence not being present, the verdict is not supportable.

4. Since appellees are not entitled to damages, they cannot recover attorney fees or expenses of litigation. "Expenses of litigation and attorney fees are recoverable only in cases where elements of damage are recoverable." *Bigelow-Sanford Carpet Co. v. Goodroe,* 98 Ga. App. 394 (5) (106 SE2d 45) (1958).

*Judgments reversed. Birdsong and Carley, JJ., concur.*

ARGUED JUNE 11, 1979 — DECIDED NOVEMBER 21, 1979 —

*E. Wayne Wallhausen,* for appellant (Case No. 57939).

*Alfred R. Roach, Jr., Scott Walters, Jr., Michael Dailey,* for appellees.

*Scott Walters, Jr.,* for appellant (Case No. 57940).

*Alfred R. Roach, Jr., E. Wayne Wallhausen,* for appellees.